UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GARRISON,
GEORGE DAVIS, ERNIE JONES,
and RONALD WORDEN,

    *Plaintiffs,*                                CASE NO. 09-CV-10231

v.                                             DISTRICT JUDGE LAWRENCE ZATKOFF
                                                 MAGISTRATE JUDGE CHARLES BINDER

MICHIGAN DEPARTMENT OF
CORRECTIONS, PATRICIA CARUSO,
MICHAEL MARTIN, and
JULIUS O. CURLING,

    *Defendants.*
    _____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION,
PLAINTIFFS' MOTION TO AMEND COMPLAINT,
DEFENDANTS' MOTION TO DISMISS AND/OR MOTION
FOR SUMMARY JUDGMENT, AND
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
(Docs. 11, 28, 37, 40)

### I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss or for summary judgment (Doc. 37) be **GRANTED** and that Plaintiffs' motion for temporary restraining order or preliminary injunction (Doc. 11), motion to amend complaint (Doc. 28), and motion for summary judgment (Doc. 40) be **DENIED**.

### II.   REPORT

**A.     Introduction**

On January 21, 2009, Plaintiff Garrison filed this civil rights complaint as co-plaintiff with George Davis, Ernie Jones, and Ronald Worden, who are also inmates in the custody of the Michigan Department of Corrections. U.S. District Judge Lawrence P. Zatkoff referred all pretrial proceedings to the undersigned magistrate judge on January 23, 2009. Pending before the Court are the following motions: (1) Plaintiffs' motion for temporary restraining order and preliminary injunction; (2) Plaintiffs' motion to amend complaint (Doc. 28); (3) Defendants' motion to dismiss and/or motion for summary judgment (Doc. 37); and (4) Plaintiffs' motion for summary judgment. (Doc. 40.) I note that Plaintiffs' motion for summary judgment may also be considered a response to Defendants' motion. Plaintiffs also filed a "Citation of Supplemental Authority" with respect to their motion for temporary restraining order and preliminary injunction. (Docs. 11, 42.) Defendants responded to Plaintiffs' motion to amend (Doc. 28) and Plaintiffs' motion for temporary restraining order and preliminary injunction. (Doc. 11, 43.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Background**

Plaintiffs' complaint avers that they are "followers of the Native American Traditional Spiritual Ways religion" and that the events complained of occurred while they were housed at the Deerfield Correctional Facility in Ionia, Michigan, which is a minimum security prison. (Doc. 1 ¶ 1.) The complaint further states that Defendant Patricia Caruso is the Director of the Michigan Department of Corrections (MDOC), that Defendant Michael Martin is the "statewide religious activities coordinator," and that Defendant Julius D. Curling is an assistant attorney general for the state of Michigan who "filed a complaint against Defendant [sic] Michael Garrison under

2

Michigan's State Facility Reimbursement Act . . . to seize 50% of his deceased father's life insurance proceeds in the amount of $4,290 in the Wayne County State Circuit Court." (*Id.* ¶¶ 2-3.) Paragraphs 4 through 12 describe the state court action and how Plaintiff Garrison has suffered financially as a result of the state court action. (*Id.*)

The complaint asserts 24 counts. The first 20 counts are made against Defendants MDOC, Caruso, and Martin. Plaintiffs cite a policy letter dated December 17, 2008, which they allege burdens the exercise of their religion without any substantial or compelling reason in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1, by prohibiting: (Count I) "possessing any ceremonial tobacco or 'Kinnik-nik' which Plaintiffs cannot pray without and prohibition of their possession of matches which are needed to smudge and pray"; (Count II) "possessing a small prayer pipe for personal prayer use"; (Count III) "possessing a small 4' [sic] inch abalone shell or prayer feather to use when smudging (burning spiritual herbs to clear negative energies) and prayer"; (Count IV) "possessing a ceremonial prayer pipe and prohibiting them from conducting ceremonies at their group meeting without an outside (non-prisoner) volunteer"; (Count V) "assembling a sweat lodge, or accessing a sweat lodge without an outside (non-prisoner) volunteer"; (Count VI) "celebrating their 4 spiritual feasts a year"; (Count VII) "conducting a spiritual drum ceremony at their group meeting without an outside (non-prisoner) volunteer"; (Count VIII) "attending their weekly primary group religious service when in conflict with prison detail"; (Count IX) "personal possession of mandelas, dream catchers or materials to make them for spiritual reasons"; (Count X) "possession of personal small crystals or megis shells for use in prayer"; (Count XI) "possessing and using a spirit rattle during their weekly primary religious group meeting"; (Count XII) "personal possession of small animal parts such as a bear tooth, eagle claw or raccoon tail to carry in their medicine bag"; (Count XIII)

"growing their own sacred herbs and plants such as sweetgrass, cedar, and sage"; (Count XIV) "wearing their medicine bag outside of their clothing and from wearing it at all during the summer when not wearing a shirt"; (Count XV) "possessing more than one medicine bag at a time such as a tobacco pouch for laying tobacco in prayer"; (Count XVI) "possession of a medicine bag larger than 3 by 5' [sic] inches, and any spirit robes or spirit blankets for use in fasting and vision quests"; (Count XVII) "a qualified spiritual leader from conducting pipe prayer ceremonies or sweat lodge ceremonies"; (Count XVIII) "possession of personal spiritual headbands"; (Count XIX) "personal possession of red felt or animal pelts to use as a medicine bundle to wrap up spiritual items when not in use"; (Count XX) "access to their prayer circle during open yard to individually smudge and pray." (*Id.* at 3-6.)

Plaintiff Garrison also alleges the following 4 counts against Defendant Curling: (Count XXI) violation of due process under the Fourteenth Amendment by "depriving him of use of his property interest in his prison account funds pursuant to an established state procedure without first affording him any right to be heard or predeprivation hearing"; (Count XXII) violation of the right of access to the courts under the First and Fourteenth Amendments; (Count XXIII) violation of the right to freely practice religion under the First Amendment and the RLUIPA; (Count XXIV) violation of the right to be free from cruel and unusual punishment and to be free from deliberate indifference to serious medical needs under the Eighth Amendment. (*Id.* at 6.)

Plaintiffs seek declaratory and injunctive relief, as well as monetary damages in the amount of one million dollars against Defendants MDOC, Caruso and Martin and $200,000 against Defendant Curling. (*Id.* at 7.)

**C.     Motion Standards**

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination were insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does

5

not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part

6

of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### D.     Defendants' Motion to Dismiss or for Summary Judgment

#### 1.     Defendant MDOC

It has long been established that, regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979), and the state of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the state of Michigan (acting through the MDOC)

is not a "person"[1] who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).

Accordingly, I suggest that Defendant MDOC's motion to dismiss be granted.

**2**.     **Defendant Curling**

Defendant Curling, who is an assistant attorney general for the state of Michigan, contends that Plaintiff Garrison's claims against him are barred under the *Rooker-Feldman* doctrine because they are intertwined with Defendant Curling's state court suit against Plaintiff Garrison under the State Correctional Facilities Reimbursement Act (SCRFA). (Doc. 37 at 13-16.)

Pursuant to the *Rooker-Feldman* doctrine, this Court has no power to overturn state court judgments. The Sixth Circuit has explained the foundation of the doctrine as follows:

> The doctrine originates from two Supreme Court decisions, which were rendered 60 years apart. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases the plaintiffs challenged the validity of state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79.

*Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006). Lower federal courts also lack jurisdiction to review any federal claims that are "inextricably intertwined" with a state court's decision. *See*

---

[1] The text of 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

8

*Feldman*, 460 U.S. at 486-87. A plaintiff's federal claim is inextricably intertwined if the claim can succeed only to the extent that the state court wrongly decided the issues before it. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) ("'Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.'") (quoting *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990)).

In the instant case, all of Plaintiff Garrison's complaints against Defendant Curling challenge the constitutionality of his actions as an assistant attorney general who "filed a complaint against Defendant [sic] Michael Garrison under Michigan's State Facility Reimbursement Act . . . to seize 50% of his deceased father's life insurance proceeds in the amount of $4,290 in the Wayne County State Circuit Court." (Doc. 1 ¶¶ 2-3.) In this case, as in *Rooker*, Plaintiff is asking the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. I therefore suggest that, as the Court found in *Rooker*, this Court lacks subject matter jurisdiction and Defendant Curling's motion to dismiss should be granted.

Alternatively, although not argued by Defendant Curling, Defendant Curling's motion to dismiss could also be granted on the ground that he is entitled to absolute prosecutorial immunity. "[A] prosecuting attorney will only receive absolute immunity for activities that were 'an integral part of the judicial process.'" *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (citing *Imbler v. Pachtman*, 424 U.S. 409, 413, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Since *Imbler*, courts have taken a "functional approach" and "have concluded that a prosecutor is protected 'in connection with his duties in functioning as a prosecutor.'" *Id.* (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). The "critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial

phase of the criminal process." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis in original). I suggest that the filing and continued prosecution of a case are activities squarely within the purview of absolute prosecutorial immunity and that Defendant Curling's motion could be granted on this basis as well.

### 3. Defendants Caruso and Martin

Defendants Caruso and Martin argue that the RLUIPA has not abrogated state sovereign immunity such that money damages are recoverable under the Act and that Plaintiff has not averred a substantial burden on his religious exercise that would justify injunctive relief. (Doc. 37 at 16-19.)

RLUIPA provides in pertinent part that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §§ 2000cc-1(a). Government is defined as including states and their agencies, as well as persons acting under color of state law. 42 U.S.C. §§ 2000cc-5(4)(A). Therefore, a plaintiff's claim against a state official, such as a prison warden, in his official capacity, is considered a claim against the state. *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009). Accordingly, any immunity afforded the state applies to any official capacity claim against any state official. (*Id.*)

The Sixth Circuit recently held that "because RLUIPA's 'appropriate relief' language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA." *Cardinal,* 564 F.3d at 801. As a result, the only remaining question as to RLUIPA is whether Plaintiffs have sufficiently

averred a claim for injunctive relief. When deciding whether to grant injunctive relief, a district court should consider the following four factors: (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (en banc). A finding that there is no likelihood of success on the merits is usually fatal. *See Gonzales v. Nat'l Bd. Of Med. Examiners,* 225 F.3d 620, 625 (6th Cir. 2000).

In the instant case, I suggest that there is no likelihood of success on the merits that would justify injunctive relief and that the public interest would not be served by issuance of an injunction. I further suggest that although Plaintiffs may suffer irreparable injury in the sense that they cannot recapture time during which activities were prohibited, issuance of the injunction could cause substantial harm to others; thus the second and third factors cancel one another out.

As to the merits, the United States Supreme Court has held that courts should consider four factors in determining the reasonableness of the prison regulation at issue challenged under the RLUIPA: (1) there must be a "valid, rational connection" between the prison regulation and the legitimate government al interest proffered to justify the regulation; (2) the reasonableness inquiry should consider whether there are "alternative means of exercising the right that remain open to the prison inmate"; (3) courts should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the existence or absence of ready alternatives of accommodating the prisoner's rights should also be considered in determining the reasonableness of the regulation. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). It should also be kept in mind

that the RLUIPA was enacted to eliminate "frivolous or arbitrary" barriers to a prisoner's free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 716, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005).

I note that Plaintiffs have not alleged that they are prohibited from participating in sweat lodges or spiritual drum ceremonies. Nor have they alleged they are prohibited from wearing a medicine bag. Instead, they object to: (1) a non-prisoner volunteer being present during the ceremonies, (2) size restrictions on the medicine bags, (3) the rule that the bag may not be worn outside their clothing and (4) that a medicine bag may not be worn when the prisoner is not wearing a shirt. (Doc. 1, Counts V, VIII, XIV, XV, XVI, XVII.) In addition, Plaintiffs do not contend that religious items are unavailable during the ceremonies, but rather they object that some items may not be possessed personally, i.e., in the cell of the inmate. (Counts I, II, III, IX, X, XII, XIII, XVIII.) In other words, Plaintiffs' own averments reveal that they are provided with several regularly-scheduled channels to fully express their religion.

I suggest that the cases interpreting the RLUIPA have held that regulations such as those challenged in the instant complaint do not substantially burden the right to freely exercise religion, are not frivolous or arbitrary, and are justified by security and resource concerns. *See Odneal v. Pierce*, 324 Fed. App'x 297, 299 (5th Cir. 2009) (RLUIPA not violated by prison requirement that outside volunteer be present at Native American religious services); *Fowler v. Crawford*, 534 F.3d 931, 939-40 (8th Cir. 2008) (complete prohibition of sweat lodge on grounds of maximum security prison did not violate RLUIPA because of security and safety concerns as well as drain 6-7 hour ceremony would place on prison's manpower); *Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007) (RLUIPA not violated by prison policy prohibiting inmates from holding religious services without assistance of a rabbi or approved outside volunteer); *Runningbird v. Weber*, 198 Fed.

12

App'x 576, 578 (8th Cir. 2006) (leave to amend properly denied as futile because RLUIPA not violated by prison restrictions on tobacco and prohibitions on peyote and certain sacred food); *Brunskill v. Boyd*, 141 Fed. App'x 771, 776 (11th Cir. 2005) (First Amendment and RLUIPA not violated by prohibition on possession of tobacco, sage, cedar, sweetgrass, beads, leather, thread, needles, and feathers); *Thompson v. Scott*, 86 Fed. App'x 17, 18 (5th Cir. 2004) (RLUIPA not violated by confiscation of prisoner's medicine bag and dream catcher); *Henderson v. Terhune*, 379 F.3d 709, 714 (9th Cir. 2004) (RLUIPA not violated by prison requirement that hair be cut short where inmate allowed to participate in pipe ceremonies and sweat lodge because he was not denied only one avenue of religious expression and had alternative means of religious expression); *McElhaney v. Elo,* No. 98-1832, 2000 WL 32036, at *4 (6th Cir. Jan. 6, 2000) (banning personal ceremonial pipes and requiring volunteer coordinators to lead ceremonies does not violate the Free Exercise Clause of the First Amendment); *Anderson v. Angelone*, 123 F.3d 1197, 1199 (9th Cir. 1997) ("Requiring an outside minster to lead religious activity among inmates undoubtedly contributes to prison security."); *Standing Deer v. Carlson*, 831 F.2d 1525, 1528-29 (9th Cir. 1987) (RLUIPA not violated by prohibition on wearing headbands); *Hodgson v. Fabian*, No. 08-5120, 2009 WL 2972862, at *1, 4, 12-15 (D. Minn. Sept. 10, 2009) (RLUIPA not violated by prison's prohibitions on smudging, burning incense in the chapel, and possession of sage, sweetgrass, cedar, bear root, and bitter root and prayer oils); *Smith v. Frank*, No. 07-C-83, 2009 WL 750272, at *2, 8 (E.D. Wis. Mar. 20, 2009) (RLUIPA not violated by confiscation of eagle feather and tobacco when cell searched).

In addition, since the prison where the incidents giving rise to the complaint has been closed and all plaintiffs now reside elsewhere, their claims for injunctive relief are moot and the motion could be denied on this ground as well. *See Kensu v. Haight*, 87 F.3d 172, 175 (6th Cir. 1996).

I therefore suggest that the motion for injunctive relief be denied and that the RLUIPA claim be dismissed in its entirety.

### E. Alternative Analysis

Although I recommend that the complaint be dismissed in its entirety, should the Court find that any claims remain, I suggest that Plaintiff Garrison's *in forma pauperis* status be revoked and his claims be dismissed without prejudice.

Defendants argue that since Plaintiff Garrison already has "three strikes," the complaint should be dismissed, or alternatively, Plaintiff Garrison's claims should be severed and dismissed. (Docs. 2, 10, 37 at 11-13.) Each plaintiff applied for and was granted *in forma pauperis* (IFP) status and the filing fee was apportioned among them. (Docs. 2, 3, 4, 5, 7, 8, 9, 10.)[2] The Prison Litigation Reform Act ("PLRA") was enacted on April 26, 1996. It contains the following paragraph, which is commonly known as the "three strikes" provision:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was

---

[2]The courts of the Eastern District of Michigan have relied on the administrative order issued within months of the PLRA, i.e., *In Re Prison Litigation Reform Act*, 105 F.3d 1131, 1137-38 (6th Cir. 1997), for the conclusion that the filing fee should be apportioned between multiple prisoner plaintiffs. *See, e.g., Williams v. Lafler*, No. 08-13821, 2009 WL 87004, at *1 (E.D. Mich. Jan. 12, 2009); *Coleman v. Granholm*, No. 06-12485, 2007 WL 1011662, at *2 (E.D. Mich. Mar. 29, 2007). I note that other district courts within our circuit have concluded that since the Order "did not consider the impact of Fed. R. Civ. P. 20 on implementation of the PLRA [or the fact that] the PLRA was designed to make prisoners feel the deterrent effect of the filing fee . . . [courts should conclude that] each separate plaintiff is individually responsible for a full filing fee . . . ." *Jones v. Fletcher*, No. A.05CV07-JMH, 2005 WL 1175960, at *6 (E.D. Ky. May 5, 2005); *Lawson v. Sizemore*, No. A.05-CV-108-KKC, 2005 WL 1514310, at *1 n.1 (E.D. Ky. June 24, 2005). Other circuits have also held that each prisoner in a multiple prisoner plaintiff action must pay the entire filing fee rather than apportioning the fee among them. *See, e.g., Hagan v. Rogers*, 570 F.3d 146, 155-56 (3rd Cir. 2009) ("Reading the PLRA as requiring each joined IFP litigant to pay a full individual filing fee . . . harmonizes the PLRA with Rule 20, and internally harmonizes the various provisions of § 1915(b)); *Boriboune v. Berge,* 391 F.3d 852, 855-56 (7th Cir. 2004) ("Because the PLRA does not repeal or modify Rule 20, district courts must accept complaints filed by multiple prisoners if the criteria for permissive joinder are met . . . we take § 1915(b)(1) at face value and hold that one price of *forma pauperis* status is each prisoner's responsibility to pay the full fee in installments (or in advance, if § 1915(g) applies), no matter how many other plaintiffs join the complaint."); *Hubbard v. Haley*, 262 F.3d 1194, 1198 (11th Cir. 2001) ("the plain language of the PLRA requires that each prisoner proceeding IFP pay the full filing fee" when it states "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee").

14

>dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If a prisoner's "complaint clearly satisfie[s] the provisions of § 1915(g) at the moment of filing, the district court ha[s] no authority to consider the merits of the complaint." *Mitchell v. Tennessee*, 86 Fed. App'x 898, 899 (6th Cir. 2004). *See also Peeples v. Bradshaw,* 110 Fed. App'x 590 (6th Cir. 2004) (same); *Wallace v. Franklin*, 66 Fed. App'x 546, 547 (6th Cir. 2003) (same). If three strikes are found, the court is to deny the plaintiff the privilege of proceeding without prepayment of fees and require full payment of the filing fee. *Id.* at 602-04.

>United States District Judge Nancy Edmunds held as follows in *State Treasurer v. Garrison*:

>In the present case, defendant Garrison has four prior civil rights complaints which were dismissed for being frivolous, malicious, or failing to state a claim upon which relief can be granted. More importantly, Garrison was advised by another judge in this district only three months ago that he was precluded from proceeding *in forma pauperis* in another civil rights action pursuant to § 1915(g) because of these four prior dismissals . . . . In this case, defendant Garrison has committed what is tantamount to a fraud upon this Court by implicitly requesting *in forma pauperis* status without revealing that another judge in this district has previously precluded him from proceeding *in forma pauperis* pursuant to § 1915(g).

*State Treasurer v. Garrison*, No. 2:08-CV-13018, 2008 WL 2831241, at *2 (E.D. Mich. July 21, 2008). The four "strikes" referred to are: *Garrison v. Asset Accept. Corp.*, No. 07-CV-11953, 2007 WL 1657405 (E.D. Mich. June 7, 2007); *Garrison v. M.D.O.C.*, No. 01-CV-0035 (W.D. Mich. Aug. 14, 2001); *Garrison v. Braddock*, No. 98-CV-00246 (W.D. Mich. Sept. 3, 1998); and *Garrison v. Handlon MI Training*, No. 94-CV-60293-DT (E.D. Mich. Mar. 8, 1995).

In the instant case, Plaintiff similarly neglected to reveal the fact that he has previously been prohibited from seeking IFP status and he similarly has not alleged that he is in imminent danger of serious physical injury. Therefore, if the instant action survives, I suggest that Plaintiff Garrison's IFP status be revoked and his complaint dismissed without prejudice. *See Davis v.*

*Schneiter*, No. 08-CV-504, 2008 WL 3540430 (E.D. Wis. Aug. 13, 2008) (severing plaintiff that had accumulated more than three strikes from co-plaintiffs that had not accumulated three strikes and dismissing severed plaintiff's complaint without prejudice to his refiling with the requisite filing fee).

### F.  Plaintiffs' Remaining Motions

For the reasons stated above, I further suggest that the motions brought by Plaintiffs for temporary restraining order and preliminary injunction (Doc. 11) and for summary judgment (Doc. 40) should be denied.

Plaintiffs also filed a motion to amend complaint which avers new allegations based on incidents occurring at the West Shoreline Correctional Facility. (Doc. 28.)  Since West Shoreline Facility is in Muskegon Heights, Michigan, any complaint over incidents occurring there should be filed in the Western District of Michigan where venue is proper and would be subject to transfer to the Western District if filed here.  28 U.S.C. § 1406(a).  I therefore suggest that this motion also be denied.

## III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                              s/ *Charles E. Binder*
                                              CHARLES E. BINDER
Dated: October 16, 2009               United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Julia Bell, served in the tradition manner on District Judge Zatkoff; and served by first class mail on the following individuals:

Mr. Michael Garrison, #237608  
Boyer Rd/Carson City Correctional Facility  
P.O. Box 5000  
Carson City, MI   48811-5000  

Mr. George Davis  
10230 Legion Dr.  
St. Helen, MI   48656-8230  

Mr. Ernie Jones, #375655  
Parr Highway Correctional Facility  
2727 E. Beecher St.  
Adrian, MI   49221-3506  

Mr. Ronald Worden, #235201  
Florence Crane Correctional Facility  
38 Fourth St.  
Coldwater, MI   49036-8607  

Date: October 16, 2009           By    s/*Jean L. Broucek*
                                        Case Manager to Magistrate Judge Binder